IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DEBRA LYNN UPTON, | ) |
| Plaintiff, | ) ) ) |
| vs. | ) ) Civil No. 20-430 |
| COMMISSIONER OF SOCIAL SECURITY, | ) ) ) |
| Defendant. | ) |

ORDER

AND NOW, this 28th day of April, 2021, upon consideration of the parties' cross-motions for summary judgment, the Court will grant Defendant's motion. The Court has reviewed the Commissioner of Social Security's final decision denying Plaintiff's application for disability insurance benefits and supplemental security income, pursuant to Title II and Title XVI of the Social Security Act, and finds the decision is supported by substantial evidence. *See* 42 U.S.C. § 405(g); *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153—54 (2019); *Jesurum v. Sec'y of U.S. Dep't of Health & Human Servs.*, 48 F.3d 114, 117 (3d Cir. 1995) (citing *Brown v. Bowen*, 845 F.2d 1211, 1213 (3d Cir.1988)); *Berry v. Sullivan*, 738 F. Supp. 942, 944 (W.D. Pa. 1990) ("The court may neither reweigh the evidence, nor may we reverse the Secretary merely because we would have decided the claim differently.") (citing *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir.1981)).[1]

---

[1] Plaintiff argues the Administrative Law Judge's ("ALJ") decision is not supported by substantial evidence because the ALJ (1) inadequately justified her decision to afford the medical opinion evidence only partial weight, (2) failed to develop the record when she strictly enforced the five-day rule for admission of evidence, and (3) ignored Plaintiff's work history which ought to have demonstrated Plaintiff's credibility and strengthened her claim. The Court finds no such shortcomings. The underlying decision is supported by substantial evidence, and Defendant's summary judgment motion shall be granted.

Plaintiff first argues the ALJ afforded Dr. Van Tran's medical opinion only partial weight without connecting that finding to the evidence with a "logical bridge." (Doc. No. 14, pg. 10)

(citing *Gamret v. Colvin*, 994 F. Supp. 2d 695, 698 (W.D. Pa. 2014)).  In formulating a claimant's residual functional capacity (RFC), ALJs consider "all relevant evidence." *Fargnoli v. Massanari*, 247 F.3d 34, 41 (3d Cir. 2001).  They must explain their consideration of the evidence in enough detail to permit review.  *See id.* at 41—42.  Where conflicts in and among evidence arise, ALJs may "accept some" and "reject other evidence," so long as they "provide[] an explanation for discrediting the rejected evidence." *Zirnsak v. Colvin*, 777 F.3d 607, 614 (3d Cir. 2014); *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 121 (3d Cir. 2000).

ALJs are not medical experts.  *See Schmidt v. Sullivan*, 914 F.2d 117, 118 (7th Cir. 1990) ("[J]udges, including administrative law judges of the Social Security Administration, must be careful not to succumb to the temptation to play doctor.").  Therefore, opinion evidence provided by medical experts is recognized as particularly important in disability determinations.  *See* 20 C.F.R. §§ 404.1527(c), 416.927(c) ("[W]e will evaluate every medical opinion we receive.").  However, it is ultimately "[t]he ALJ—not treating or examining physicians or State agency consultants" who fixes a claimant's RFC and determines disability status.  *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011).  An ALJ may therefore afford medical opinion evidence little or no weight, and a reviewing court will not upset that determination where it is supported by substantial evidence.  *Zirnsak*, 777 F.3d at 614.  Put differently, so long as the ALJ's reason for affording medical opinion evidence a particular weight is supported by "such relevant evidence as a reasonable mind might accept as adequate to support [that] conclusion," the Court will not "substitute [its] own judgment" for that of the ALJ.  *Id.* at 610—11.

Dr. Van Tran's September 20, 2016 Disability Determination Explanation(s) appear in the record at R. 220—39 (Ex. 1A, 2A).  Dr. Van Tran considered Plaintiff's medical condition and limitations as a State agency consultative physician.  At that time, Dr. Van Tran had the opportunity to consider medical records he received up until September 2016.  (R. 221—23).  Dr. Van Tran noted the results of Plaintiff's October 2015 lumbar MRI, the stroke she suffered in March 2016, her neuropathy, and her post-stroke recovery as of April and August 2016.  (R. 223—24).  Considering Plaintiff's medical history, Dr. Van Tran determined Plaintiff's medical impairments were at least partially consistent with her symptoms, and further determined Plaintiff would be able to stand and walk only two hours in an eight-hour workday.  (R. 225).  The ALJ considered Dr. Van Tran's assessment and afforded it "partial weight."  (R. 37).  The ALJ explained that she would afford it only partial weight because Dr. Van Tran's opinion was formed just six months after Plaintiff suffered a stroke (R. 37), thus a significant amount of evidence in the record post-dated Dr. Van Tran's opinion.  Looking at the evidence in the record that had amassed since September 2016, the ALJ found Dr. Van Tran's proposed limitations "somewhat excessive" (R. 37), and opted for a four-hour stand-and-walk limitation instead of Dr. Van Tran's two-hour limitation.  (R. 31).

Plaintiff argues the reasons the ALJ gave for "rejecting" Dr. Van Tran's opinion are "factually inaccurate and/or contrary to law," and explains that while much of the evidence in the record post-dates Dr. Van Tran's opinion, that later evidence vindicates Dr. Van Tran's proposed limitations.  (Doc. No. 14, pgs. 5—6, 10).  Plaintiff points to instances in her medical records between November 2016 and August 2018 where she complained to her physicians about "freez[ing] up," knee pain, back pain, hip pain, numb and tingly feet, headaches,

lightheadedness, "shot" fine motor skills, and feeling off-balance. (Doc. No. 14, pgs. 8—10) (citing R. 618—19, 638, 641, 666, 708—10, 732—34, 744—49). She also points out her physicians' findings during that time, which included ongoing difficulties with balance (R. 734, Ex. 8F, *Dr. Starr—October 2016*); worsening back, hip, and knee pain over a six-year period (R. 747, Ex. 9F, *Dr. Gallagher—December 2016*); an "ok" gait (R. 619, Ex. 7F, *Dr. Brizuela—January 2017*); implantation of a loop monitor, leg pain, and a slow and antalgic gait (R. 709—10, Ex. 8F, *Dr. Starr—April 2017*); hypertension, diabetes Type II, morbid obesity, and stroke syndrome (R. 641, Ex. 8F, *Dr. Cole—November 2017*); and chronic back pain, lumbar spinal stenosis, osteoarthritis, and left-knee pain (R. 752—53, Ex. 9F, *Pain and Spine Specialists of Pennsylvania—August 2018*). Plaintiff urges the Court to consider that these medical records bear out Dr. Van Tran's September 2016 opinion. However, the Court's role is not to weigh the objective medical evidence against Dr. Van Tran's opinion, but to ensure the ALJ weighed all of the evidence and arrived at conclusions supported by substantial evidence.

The Court finds the ALJ did just that. Her decision demonstrates she considered Dr. Brizuela's January 2017 findings, including that Plaintiff's gait was "ok," but further that Plaintiff's strength was five out of five. (R. 35). The ALJ considered Dr. Starr's April 2017 notations concerning Plaintiff's loop monitor and pain, but also Dr. Starr's finding that Plaintiff's strength was five of five and that she lacked any new stroke symptoms. (R. 34). She further considered Dr. Starr's findings that Plaintiff's tone in her upper and lower extremities, movement, and coordination were all normal. (R. 36) (mistakenly referring to Dr. Cole when recounting Dr. Starr's findings as they appear at Ex. 8F/80). The ALJ also reviewed Plaintiff's August 2018 treatment at the Pain and Spine Specialists of Pennsylvania and notes concerning Plaintiff's chronic pain, lumbar spinal stenosis, and osteoarthritis. (R. 36). Based on the evidence in the record, the ALJ determined Plaintiff did not have "debilitating limitations," and found her "degenerative disease and . . . pain" could be accommodated by limiting her work to a "light exertional level with an additional limitation regarding walking/standing," *i.e.*, a four-hour limit. (R. 36). The ALJ's thorough review of the evidence supports her determination that Plaintiff would be capable of standing and walking for four working hours. Considering the ALJ's explanation of her consideration of the evidence, the Court finds that her decision to afford Dr. Van Tran's opinion only partial weight is well-supported and reasonable. The ALJ's explanation for that finding—that Dr. Van Tran's opinion was not informed by later medical records—proceeds coherently from the evidence. The ALJ clearly interpreted the evidence to indicate Plaintiff's condition had improved since Dr. Van Tran evaluated Plaintiff in September 2016, and substantial evidence supports that finding. Therefore, the Court will leave the ALJ's determination of the weight afforded Dr. Van Tran's opinion undisturbed. *Cf. Simmonds v. Heckler*, 807 F.2d 54, 58 (3d Cir. 1986) ("[O]ur inquiry is not whether the ALJ could have reasonably made a different finding based on this record."); *Malloy v. Comm'r of Soc. Sec.*, 306 F. App'x 761, 764 (3d Cir. 2009).

Plaintiff's second argument is that the ALJ ought to have permitted admission of untimely evidence because it was relevant and probative. She argues the ALJ's refusal to relax the time for filing constituted a dereliction of the ALJ's duty to develop the record. (Doc. No. 14, pgs. 11—17). ALJs are tasked with ensuring development of the record. *Ventura v. Shalala*, 55 F.3d 900, 902 (3d Cir. 1995) ("ALJs have a duty to develop a full and fair record in social

security cases."). Owing to that unique responsibility, ALJs may receive evidence that would be "inadmissible under rules of evidence applicable to court procedure." *Richardson v. Perales*, 402 U.S. 389, 400 (1971) (citing 42 U.S.C. § 405(b)). The relaxed standard reflects the emphasis on fairness over formality in social security proceedings. *Id.* However, in eschewing formality, ALJs are not obligated to permit a free-for-all. The Commissioner is empowered to "make rules and regulations and to establish procedures" to facilitate disability determinations. 42 U.S.C. § 405(a). The five-day rule reflects the balance the Commissioner has struck between ALJs' duty to develop the record and the necessity of having a system that works. *Cf. Richardson*, 402 U.S. at 399. According to the rule, claimants must ensure their evidence is received by the ALJ five days before a hearing. 20 C.F.R. §§ 404.935(a), 416.1435(a). Evidence the ALJ receives less than five days before a hearing may be excluded. *Id.* The consequences of the rule are tempered by its exceptions, provided in subsection (b), which excuse failure to timely file for, among other things, an "unusual, unexpected, or unavoidable circumstance beyond [the claimant's] control." 20 C.F.R. §§ 404.935(b)(3), 416.1435(b)(3). The rule and its exceptions thus ensure disability determinations are informed by a wealth of evidence while also proceeding efficiently. *Ensuring Program Uniformity at the Hearing and Appeals Council Levels of the Administrative Review Process,* 81 Fed. Reg. 90987-01 ("[T]he 5-day requirement promotes the efficiency of our hearings process and allows it to work more effectively by ensuring that ALJs have a more complete evidentiary record when they hold hearings.").

In this matter, Plaintiff sought to have several medical records admitted late. (R. 172, 217). Those records included MRI results, materials from the Pain and Spine Specialists of Pennsylvania, and evaluations from Kreinbrook Psychological Services. (R. 172—74). Discussing those records, Plaintiff's counsel conceded their untimeliness. (R. 172) ("ATTY: Your Honor, normally, I get them in way ahead of time, as you know. But this time, I didn't, and it was my fault."). The ALJ then discussed with Plaintiff's counsel the opportunity to argue for an exception:

> ALJ:  There was plenty of time to be able to get those -- that information into the record. But like I said, I will reconsider it if you can provide me with some kind of information showing that those were actually faxed into the record within the time requirements under the regulations.
> ATTY: Okay.
> ALJ:  All right? Otherwise, I'm denying admission of these late records, because as of right now, we have not established that any of the B criteria are met. Specifically, there was no unusual, unexpected, or unavoidable circumstances beyond your control which prevented informing me about, or submitting the records earlier. . . . I will give you until the 19th --
> ATTY: Okay.

> ALJ:   -- 19 September to provide me with evidence that those records were submitted in a timely manner. If you cannot provide me with evidence that the records were submitted in within [sic] a timely manner, then I will deny admission of the records, as there was ample time between the time that the service was done and today to get those records into the case file. And the reason that we want timely submission of evidence is so that we have the -- so that I have the ability to thoroughly review the record prior to coming here in a hearing.

(R. 174—75). Though the ALJ refused to admit the untimely evidence, she encouraged Plaintiff's counsel to develop the record related to that evidence at the hearing. (R. 176) ("ALJ: Okay. And you can, of course, Counsel, certainly ask the Claimant questions about the records that I have denied admission to."). At the end of the hearing, the ALJ again discussed with Plaintiff the opportunity to request an exception to the five-day rule when she reminded Plaintiff that she "would consider that if you did fax [the untimely records] in on the day that you said, within the time frame required, that would be an uncontrollable circumstance. But short of evidence that they were actually faxed in, I don't see the -- but I'll give you the opportunity to prove the B criteria." (R. 218). Despite these two exception colloquies, the ALJ observed in her decision that "[a]s of September 26, 2018, the representative had not submitted any information that would support his assertion that the records (or an attempt to submit the records) were submitted in a timely manner." (R. 26). In the absence of any argument concerning an exception to the five-day rule, the ALJ did not reconsider her decision to exclude the untimely records. Instead, she considered the "information contained in those records" to the extent Plaintiff had covered that information in her testimony. (R. 26).

    Where, as here, the ALJ excluded untimely evidence and provided every opportunity for Plaintiff to argue an exception excusing the lateness of her filing, the Court finds no abuse of discretion in excluding the late-filed materials. The Court is unpersuaded by Plaintiff's argument that the five-day rule must give way whenever late evidence is "relevant and probative," as long as the claimant has not been "dilatory or obstructive." (Doc. No. 14, pg. 13). The broad exception suggested by Plaintiff is unnecessary to ensure the five-day rule retains flexibility—the rule is already subject to generous exceptions. In this instance, Plaintiff simply failed to argue for one.

    Further, the Court does not agree with Plaintiff that the ALJ failed to adequately develop the record, not even where psychological records reflecting "developing cognitive impairments" were among the excluded records. (Doc. No. 14, pg. 15). Plaintiff argues that because these records indicated a mental impairment, the ALJ was required to take evidence of that impairment. Otherwise, Plaintiff argues, the ALJ's RFC determination was inaccurate and unsupported by substantial evidence. (Doc. No. 14, pg. 16). However, an ALJ need not develop the record superfluously, that is, she need not fill a gap in evidence where there is none. *See Morrill v. Saul*, No. 19-CV-6279F, 2020 WL 5107567, at *6 (W.D.N.Y. Aug. 31, 2020) ("[T]he ALJ is not required to further develop the record in the absence of a gap in the record[.]").

---

Further, an ALJ's duty to develop the record is at its height when she is considering the case of an unrepresented claimant. *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979) (discussing "the responsibility of the ALJ to assume a more active role when the claimant is unrepresented"). In this matter, Plaintiff was represented by counsel, and, though the ALJ excluded some evidence concerning Plaintiff's mental function, she considered other evidence pertaining thereto. The ALJ considered Plaintiff's concern that her memory had been affected by her stroke, but also her physicians' normal mental status findings (R. 526—27, 601, 709) in formulating Plaintiff's RFC. (R. 32—34). With the benefit of that evidence, the ALJ ultimately determined that Plaintiff suffered no "lasting debilitating limitations" from her stroke, and otherwise "accommodated any residuals from [her] strokes by reducing her to the light exertional level" with additional limitations. (R. 34). Where, as here, mental status evidence was in the record for the ALJ's consideration, the ALJ was not obligated to further develop the record in that regard before arriving at her conclusion. The Court therefore finds no failure to adequately develop the record.

Plaintiff's third and final argument is that, in addition to failing to correctly consider the opinion and other evidence, the ALJ failed to specifically consider her "exemplary work history." (Doc. No. 14, pg. 18). She argues the ALJ was required to consider her "demonstrated willingness to work" and that she was harmed by the ALJ's failure to do so because her work history bolsters her credibility. (Doc. No. 14, pgs. 18—19) (citing, *inter alia*, 20 C.F.R. § 404.1529(c)(3) ("We will consider all of the evidence presented, including information about your prior work record, your statements about your symptoms, evidence submitted by your medical sources, and observations by our employees and other persons.")). ALJs must consider all relevant evidence in the record. *Fargnoli*, 247 F.3d at 41. All evidence of course includes a claimant's testimony concerning her symptoms and limitations. That testimony may be rejected, but not without reason. *Baerga v. Richardson*, 500 F.2d 309, 312 (3rd Cir. 1974). ALJs' consideration of claimants' testimony is often referred to as a "credibility" determination, though that term has been eliminated from the Commissioner's policy concerning "subjective symptom evaluation." *Schneider v. Berryhill*, No. CV 17-1299, 2019 WL 698471, at *2 (W.D. Pa. Feb. 20, 2019) (citing SSR 16-3p) (explaining SSR 16-3p "clarif[ied] that the subjective symptom evaluation is not an examination of an individual's character"). Work history is evidence ALJs consider as part of the inquiry into whether a claimant's subjective symptoms are supported by other evidence in the record. A substantial work history tends to support a claimant's "testimony about his work capabilities." *Rinier v. Berryhill*, No. CV 17-125, 2018 WL 3574941, at *4 (W.D. Pa. July 25, 2018) (citing *Schreibeis v. Comm'r. of Soc. Sec.*, Civ. No. 10-1025, 2012 WL 11101, * 1 n. 1 (W.D. Pa. Jan. 3, 2012)). Where the record contains "evidence of severe impairments or attempt[s] to return to work," it is especially important that the ALJ attend to a claimant's "long and productive work history." *Corley v. Barnhart*, 102 F. App'x 752, 755 (3d Cir. 2004). *See Dobrowolsky*, 606 F.2d at 409. However, in the usual course, the ALJ adequately addresses a claimant's work history where the ALJ hears testimony concerning a claimant's past work, correctly determines quarters of coverage, and accurately describes the past work. *Rinier*, 2018 WL 3574941, at *5 (finding the ALJ "clearly was aware of" claimant's work where the ALJ calculated quarters of coverage, discussed whether claimant could perform past relevant work, referenced claimant's past jobs, and heard claimant's testimony concerning past work); *Schwartz v. Berryhill*, No. CV 17-854, 2018 WL 3575046, at *8 (W.D. Pa. July 25,

Therefore, IT IS HEREBY ORDERED that Plaintiff's Motion for Summary Judgment (Doc. No. 13) is DENIED and Defendant's Motion for Summary Judgment (Doc. No. 15) is GRANTED.

/s Alan N. Bloch
United States District Judge

ecf:    Counsel of Record

---

2018); *Templon v. Berryhill*, No. CV 17-84-J, 2018 WL 4219366, at *1 n.1 (W.D. Pa. Sept. 5, 2018).

   In this matter, the ALJ heard Plaintiff's testimony concerning her work history (R. 186—90), indicated her insured status would continue through December 31, 2020 (R. 28), and described Plaintiff's past relevant work as a nurse's aide (R. 37).  This Court has repeatedly found consideration of work history to that extent satisfactory.  *Rinier*, 2018 WL 3574941, at *5; *Templon*, 2018 WL 4219366, at *1 n.1.  Thus, remand for further consideration of Plaintiff's work history is unnecessary.  For that reason and the foregoing reasons, the Court finds the ALJ neither neglected evidence nor abused her discretion, and further finds the underlying decision is supported by substantial evidence.  Accordingly, the Court grants Defendant's Motion for Summary Judgment.